**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT LONDON**

**AMY CASHMER,**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**CASE NO. 6:26-cv-00031-KKC**

**OPINION and ORDER**

*** *** ***

Plaintiff Amy Cashmer brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision partially denying her claim for Disability Insurance Benefits ("DIB"). The Court, having reviewed the record, AFFIRMS the Commissioner's decision.

## I. BACKGROUND

Plaintiff Cashmer filed an initial application for DIB, on February 16, 2018, claiming she first became disabled and unable to work on June 3, 2016. (Administrative Record (hereinafter "AR") at 360.) At the time of her initial application, Cashmer was 48 years old. (AR 38.) She was divorced with two adult children, completed high school, and reported work experience as an administrative secretary, school cafeteria manager, and retail services clerk. (AR 38–44.)

The Social Security Administration (SSA) denied Cashmer's claim after initial consideration on June 20, 2018, and again on reconsideration on September 5, 2018. (AR 17.) Cashmer requested a hearing and appeared before Administrative Law Judge (ALJ) Robert Bowling to contest the SSA's decision on December 18, 2019. (AR 33–60.) On January 16, 2020, the SSA notified Cashmer that Judge Bowling determined she was not disabled (AR

17.). She requested review of the ALJ's decision, (AR 356–59.), but the SSA's Appeals Council denied her request on January 4, 2021. (AR 1.) Plaintiff Cashmer then filed a complaint with this Court on March 1, 2021, (AR 2533–35.), but her case was remanded to the SSA before a ruling (AR 2545–46.) and Cashmer appeared before Judge Bowling for a second hearing on November 15, 2022. (AR 2440–64.) Once again, the SSA notified Plaintiff that she was found not disabled (AR 2584.) and she again petitioned to the Appeals Council, (AR 2719–25.), which remanded her case for further proceedings and assigned a new ALJ. (AR 2608–12.) After a third hearing before ALJ Karen Jackson on January 11, 2024, (AR 2466–2506.), the SSA notified Cashmer that Judge Jackson had issued a partially favorable decision finding her disabled, but with the later onset date of December 17, 2019. (AR 2401–26.) Limiting her appeal to the ALJ's determination of her disability onset date, Cashmer once again petitioned the Appeals Council, (AR 2438–39.), which denied review on March 11, 2026. (AR 2377–83.) This action followed.

## II. REVIEW PROCESS AND ALJ DECISION

### A. Standard of Review

This Court's review of the Administrative Law Judge's decision is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). The "substantial evidence" standard requires courts look at the administrative record and determine whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). In this context, sufficient evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103.

The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 103, 108. The substantial evidence standard—more

than a mere scintilla of evidence but less than a preponderance, *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)—is even less demanding than the "clearly erroneous" standard that governs appellate review of district court fact-finding, which is itself a deferential standard. *Dickinson v. Zurko*, 527 U.S. 150, 152–53, 162 (1999).

When reviewing Commissioner decisions, courts do not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Similarly, courts do not reverse Commissioner or ALJ decisions merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Rather, reviewing courts must affirm the ALJ's decision if substantial evidence supports it, even if the court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**B. ALJ Process**

To determine whether a claimant has a compensable disability under the Social Security Act, the ALJ applies a five-step, sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps are:

*Step 1*: If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2*: If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3*: If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

> *Step 4*: If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5*: If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers*, 582 F.3d at 652).

If, at any step in the process, the ALJ concludes the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process, the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (citation and quotation marks omitted); *see also* 20 C.F.R. § 404.1520(g)(1).

### C. ALJ Decision

In partially denying Cashmer's claim, ALJ Jackson engaged in the five-step sequential process set forth in the regulations under the Social Security Act 20 C.F.R. § 404.1520(a)–(g).

At step one, the ALJ determined that Cashmer had not engaged in substantial gainful activity since June 3, 2016, the alleged onset date. (AR 2403.)

At step two, the ALJ determined that since June 3, 2016, Cashmer suffered from the following severe impairments: degenerative disc disease of the lumbar spine, coronary artery disease, osteoarthritis of the bilateral hips, degenerative disc disease of the cervical spine, and obesity (20 C.F.R. 404.1520(c)). (AR 2404.)

At step three, the ALJ found that since June 3, 2016, Cashmer had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 2409.)

Before proceeding to step four, the ALJ determined that since June 3, 2016, Cashmer had the residual functional capacity (RFC) to perform "sedentary" work as defined by 20 C.F.R. § 404.1567(a) with the following limitations:

> She can occasionally climb ramps or stairs; she can never climb ladders, ropes or scaffolds; she can occasionally perform balancing, stooping kneeling, crouching, or crawling; she should avoid concentrated exposure to temperature extremes and vibration; and she should avoid even moderate exposure to hazards such as unprotected heights or dangerous machinery.

(AR 2412.)

At step four, the ALJ found that since June 3, 2016, Cashmer was unable to perform any past relevant work under 20 C.F.R. 404.1565. (AR 2424.)

At step five, the ALJ determined that prior to December 17, 2019, given Cashmer's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed under 20 C.F.R. 404.1569 and 404.1569a. (*Id.*) However, the ALJ also determined that under those same considerations, on December 17, 2019—when Cashmer's age category changed to "an individual closely approaching advanced age" as per 20 C.F.R. 404.1563 (AR 2424–26.)—there were no jobs that existed in significant numbers in the national economy that she could perform under 20 C.F.R. 404.1560(c) and 404.1566. (AR 2426.)

In summary, the ALJ determined that Plaintiff Cashmer "was not disabled prior to December 17, 2019, but became disabled on that date and has continued to be disabled through the date of this decision." (AR 2426.) The ALJ's decision became the Commissioner's final decision when the Appeals Council subsequently denied Cashmer's request for further

review. *See* 20 C.F.R. § 422.210(a); (AR 2377–83.). Cashmer has therefore exhausted her administrative remedies and filed a timely appeal in this Court.

## III. ANALYSIS

Regarding the unfavorable determination for the period between June 3, 2016, and December 17, 2019, Plaintiff Cashmer challenges ALJ Jackson's disability determination on three grounds: (1) the ALJ erred in evaluating Cashmer's treating and examining medical source opinions; (2) the ALJ failed to properly evaluate Cashmer's subjective symptom testimony; and (3) the ALJ erred in evaluating the state agency medical and psychological consultant opinions. (R. 11 at 15–27.)

### A. ALJ's Evaluation of Treating and Examining Medical Source Opinions

Cashmer argues that the ALJ erred when considering the medical opinions of Dr. Leigh A. Ford, Dr. Crystal Compton, and Dr. Brenda Baker. (R. 11 at 14–22.) To satisfy the substantial evidence standard, the ALJ must document the persuasive weight of a medical source opinion and provide "sufficiently specific" reasons for the weight given. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)); *see also* 20 C.F.R. § 404.1520c(b). When evaluating the persuasiveness of a medical opinion, the "most important" factors considered by the ALJ are supportability and consistency. 20 C.F.R. § 404.1520c(a). Supportability measures the relevance and supporting explanations presented by a medical source to substantiate their opinion, while consistency considers whether an opinion is congruent with the other medical and nonmedical sources in the claim. *Id.* §§ 416.920c(c)(1)–(2).

#### i. ALJ's Evaluation of Dr. Ford's Opinion

Cashmer was referred to Leigh A. Ford, Ph.D., a psychological consultant for the State Agency, for an assessment of her reported depression and anxiety. (AR 3467.) Dr. Ford conducted the assessment on August 20, 2021, and concluded that Cashmer's "ability to

understand, remember, and carry out instructions toward performance of **simple** repetitive tasks [was] not affected by [her] impairment." (AR 3469.) (emphasis in original). Dr. Ford further noted Cashmer's impairment imposed "moderate limitations" on her ability to tolerate stress and pressures of day-to-day employment and her ability to sustain attention and concentration towards simple repetitive tasks was "not affected" by her impairment. (*Id.*) Lastly, Dr. Ford assessed Cashmer's "capacity to respond appropriately to supervision, co-workers, and pressures in a work setting [was] affected by the impairment with moderate limitations[.]" (*Id.*)

The ALJ considered Dr. Ford's evaluation and compared with assessments performed in support of Cashmer's initial claim and reconsideration. (AR 2406–07.) The ALJ found Dr. Ford's assessment of Cashmer's ability to perform "simple repetitive tasks" and sustain her attention and concentration towards those tasks persuasive but found Dr. Ford's assessment of Cashmer's ability to tolerate stress and pressure and to interact with coworkers unpersuasive when compared to the overall treatment record. (AR 2407.) After reviewing the complete record to determine Plaintiff Cashmer's level of mental impairment, the ALJ found that Cashmer: (1) had no limitations in understanding, remembering, or applying information; (2) no limitations in interacting with others; (3) mild limitations in her ability to concentrate, persist, or maintain pace; and (4) mild limitation in her ability to adapt or manage herself. (AR 2407–09.) Accordingly, the ALJ determined that because Cashmer's mental impairments caused no more than "a mild" limitation in any functional area, they should be considered "nonsevere" under 20 C.F.R. 404.1520a(d)(1). (AR 2409.)

Plaintiff argues the ALJ failed to recognize the severity of the occupational limitations highlighted by Dr. Ford. (R. 11 at 14–15; R. 17 at 1–2.) She specifically asserts Dr. Ford's use of bold type for the word "simple" was an attempt to establish a "functional ceiling" to her occupational capacity, which countermands the ALJ's RFC determination that Cashmer was

able to perform "sedentary" work during the unfavorable determination period. (R. 17 at 1.) Plaintiff also argues that the ALJ improperly weighed Dr. Ford's psychological assessment against other, unrelated physical examinations (R. 11 at 15–18; R. 17 at 2–3.) and specifically challenges the persuasive weight the ALJ afforded to the multiple, "cursory observations from [medical] visits where mental health was not even at issue." (R. 17 at 3)

Plaintiff's argument misses the mark as it attempts to supplant the ALJ's interpretation of the record. Steps 4 and 5 of the SSA disability determination process require the ALJ to examine "the kind and number of jobs available for someone with the applicant's disability and other characteristics." *Biestek*, 587 U.S. at 99. To the extent the ALJ's factual findings are supported by substantial evidence, courts reviewing a benefits decision will deem those facts to be conclusive. (*Id.*) In determining whether Cashmer was mentally fit to work between June of 2016 and December of 2019, the ALJ reviewed and specifically cited to the opinions of three psychiatric experts (AR 2406–07), seventeen separate medical treatment records and/or reports from the relevant period (citing, *e.g.*, AR 454, 481, 1842, 1869, 2056–57, 2272, 3019, 3150, 3629, 3716, 3844, 3991), six disability applicant self-assessments from the relevant period (citing, *e.g.*, AR 389, 396–98, 414–16), and Cashmer's own hearing testimony. (AR 2492–96.) The ALJ also relied on the testimony of a vocational expert, who opined that there were several "sedentary jobs" that existed in the national economy that a claimant approaching advanced age with similar mental and physical characteristics could perform. (AR 2499, 2501.) The ALJ used this evidence to evaluate the persuasiveness of Dr. Ford's singular assessment and make a reasonable RFC determination. This meets the legal standard and does not constitute reversible error.

**ii. ALJ's Evaluation of Dr. Compton's Opinion**

Crystal Compton, M.D., evaluated Cashmer on July 24, 2018, to assess her physical abilities and limitations for her initial disability claim. (AR 589–90, 593–94.) Dr. Compton's

opinion indicated that Cashmer was limited to working only two hours per day, standing for thirty minutes and sitting for thirty minutes at a time, occasionally lifting ten pounds, frequently lifting five pounds, and occasionally bending. (*Id.*) Dr. Compton also opined that Cashmer generally suffered from moderate pain and was required to frequently elevate her legs to relieve these and other symptoms of edema. (*Id.*)

The ALJ compared Dr. Compton's medical opinion to records from Cashmer's primary care physician (Dr. Brenda Baker) leading up to Compton's July 2018 assessment and found that it was "not well supported by the limited abnormal clinical findings in her treatment records." (AR 2421.) The ALJ also found that the "extensive limitations" noted by Dr. Compton were "inconsistent with the clinical findings noted in the longitudinal records that also showed [Cashmer] exhibited intact range of motion and motor strength in her upper extremities with intact grip strength, and a slightly antalgic to normal gait with intact sensation." (*Id.*) Most significant, the ALJ found Dr. Compton's "opinions were not supported by citations to objective findings or functional testing" and that Dr. Compton "did not explain why the medical conditions cited indicated a need for such extensive limitations." (AR 2420.)

Plaintiff argues that the ALJ's evaluation was speculative and "failed to provide any rationale for rejecting Dr. Compton's specific functional limitation[s]." (R. 17 at 3–4.) She further takes issue with the ALJ's conclusion that Dr. Compton relied on Dr. Baker's clinical notes to make an abilities and limitations assessment. (R. 11 19; R. 17 at 4.)

In addition to supportability and consistency, a medical provider's relationship with a patient (including the length and frequency of the treatment relationship) is a permissible factor for an ALJ to consider when determining the persuasiveness of an opinion. 20 C.F.R. 404 § 1520c(c)(3). Dr. Compton appears to have provided medical services to Cashmer on one sole occasion. Her assessment represents only four pages of a record spanning over 4,000 pages of medical history and disability application materials. The ALJ compared Dr.

Compton's assessment to twelve other record entries from the relevant period and found the opinion to be unpersuasive. (citing, *e.g.*, AR 461, 505, 584–85, 602, 611–12, 674–75, 1842, 3060, 3068.) Moreover, the ALJ found that Dr. Compton's assessment was unsupported by clinical or laboratory diagnostics. (AR 2420.) The ALJ conducted a laborious evaluation of the Plaintiff's extensive record and concluded that Dr. Compton's abilities and limitations assessment was not supported by relevant medical evidence (*Id.*) and was inconsistent with the longitudinal treatment history reflected by other medical sources. (AR 2421.) The Court accordingly finds that the ALJ reasonably articulated how she considered the supportability and consistency of this evidence and affords due deference to the ALJ's evaluation of Dr. Compton's medical opinion.

**iii. ALJ's Evaluation of Dr. Baker's Opinion**

Brenda Baker, M.D., served as Cashmer's primary medical care provider throughout the period considered by the Commissioner. (AR 2369.) In support of Plaintiff's disability application, Dr. Baker submitted two opinions during the unfavorable determination period. The first, a letter dated July 1, 2019, simply states that Cashmer "has several serious health issues, including heart disease and diabetes, and is not able to work." (AR 598.) The second opinion is a "Physical Residual Functional Capacity Assessment" form, dated December 13, 2019. (AR 2362–69.) In this assessment, Dr. Baker opined that Cashmer was limited to occasionally and frequently lifting less than ten pounds, standing for less than two hours in an eight-hour workday, and that she must periodically alternate between sitting and standing to relieve pain or discomfort. (AR 2363.) She also opined that Cashmer was limited in her lower extremities when pushing and/or pulling (*Id.*); limited in her posture to the extent that she should "never" climb, balance, stoop, kneel, crouch, or crawl (AR 2364.); and exhibited signs of "significant" exertion when walking, which caused chest pain and shortness of breath. (AR 2363.) Dr. Baker concluded that Cashmer's heart disease, obesity, low back

pain, chest pain, and "extensive medical regimen" made her "unemployable" and "indeed disabled." (AR 2367, 2369.)

The ALJ reviewed Dr. Baker's assessments and considered the functional limitations reported. (AR 2421–23.) The ALJ noted that Dr. Baker observed edema on multiple occasions, but that Cashmer's condition improved with medication. (AR 2422.) The ALJ also considered Dr. Baker's assessment of Cashmer's exertion and mobility limitations but likewise noted instances where these conditions appeared to improve. (*Id.*) Ultimately, the ALJ determined Dr. Baker's medical opinion was well supported by objective findings and persuasive "to the extent it supports a need for reduction to a sedentary exertional level with a preclusion from moderate exposure to hazards and concentrated exposure to extremes of temperature." (*Id.*)

Plaintiff argues "the ALJ engaged in the 'cherry-picking' of medical data disregarding the objective findings that supported Dr. Baker's opinion." (R. 17 at 5.) Specifically, she alleges that the ALJ failed to adequately consider Dr. Baker's assessment of Cashmer's ongoing edema symptoms and summarily dismissed Dr. Baker's recommendation that Cashmer elevate both legs when sitting to relieve this chronic condition. (R. 11 at 21–22; R. 17 at 5.)

The ALJ considered Dr. Baker's disability-related assessments and compared them to other medical observations where Cashmer's heart health, chest pain, shortness of breath, edema, and range of motion indicated improvement. (AR 462, 464–65, 468, 489, 535, 585, 611–12, 3060.) The ALJ also noted specific instances in the record where Dr. Baker's medical conclusions were well supported by objective findings but carried less persuasive weight due to "inconsistencies with the treatment record." (AR 2422–23.) As for the ALJ's purported failure to consider Dr. Baker's assessment that Cashmer could not work without periodically elevating her legs, the ALJ specifically discussed this accommodation with the vocational expert during Cashmer's hearing (AR 2501.) and in multiple portions of her final decision.

(AR 2418, 2420, 2421, 2422.) Far from ignoring relevant evidence, the ALJ conducted a thorough review of Plaintiff's record—including the extensive observations of Dr. Baker—and then weighed the relevant evidence based on its supportability and consistency to determine Cashmer's appropriate RFC.

**B. ALJ's Evaluation of Cashmer's Subjective Symptom Testimony**

Shifting focus from treating and examining medical opinions to her own self-assessment, Plaintiff next argues that the ALJ failed to properly evaluate her subjective symptom testimony. Plaintiff claims that the ALJ summarily dismissed her statements concerning the intensity, persistence, and limiting effects of her reported maladies as unsupported, but then failed to articulate why her self-assessment lacked credibility. (R. 11 at 23.)

To evaluate a claimant's symptoms, including pain, an ALJ must complete a two-step process. 20 U.S.C. § 404.1529; *see also* SSR 16-3P, 2017 WL 5180304, at *3 – 4 (Oct. 25, 2017). First, the ALJ must determine whether "medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms[.]" 20 U.S.C. § 404.1529(c)(1). Second, the ALJ must "evaluate the intensity and persistence of [those] symptoms" to determine how they limit the claimant's capacity to work. *Id*. To assess the intensity and persistence of the claimant's symptoms, the ALJ is authorized to consider objective medical evidence, including clinical and laboratory diagnostic techniques, and subjective evidence, including treatment and medication plans, aggravating factors, and impacts to the claimant's daily life. *Id.* § 404.1529(c)(2)–(3).

The ALJ first determined that since the alleged onset of disability, June 3, 2016, Cashmer suffered from "degenerative disc disease of the lumbar spine, coronary artery disease, osteoarthritis of the bilateral hips, degenerative disc disease of the cervical spine,

and obesity" and found that these conditions "significantly limit [Cashmer's] ability to perform basic work activities." (AR 2404.) She also noted additional impairments including, but not limited to, diabetes, hypertension, hypothyroidism, gastroesophageal reflux disorder (GERD), colon polyp, temporomandibular joint jaw disfunction (TMJ), myopia, presbyopia, astigmatism, and hearing loss, but found that these conditions "caused only transient and mild symptoms and limitations or are well-controlled with treatment." (AR 2404–05.) The ALJ then evaluated the intensity and persistence of Cashmer's severe and mild symptoms, citing extensively to both objective medical evidence and subjective evidence within the record. (AR 2412–16.) The ALJ determined that Cashmer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Cashmer's] statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (AR 2416.) The ALJ then painstakingly laid out an additional eight pages of analysis based on diagnostic tests, physical examinations, treating and examining physicians' notes, and Cashmer's subjective complaints. (AR 2416–23.)

When an ALJ finds that "a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers*, 486 F.3d at 247. After considering the merits of Plaintiff's subjective symptom testimony, the ALJ based her final determination on the case record as a whole. Accordingly, her determination should be afforded deference under the substantial evidence standard.

**C. ALJ's Evaluation of State Agency Consultant Opinions**

Plaintiff's final challenge is that the ALJ misattributed or completely overlooked certain opinions of state agency consultants tasked to review her record. She claims that the

ALJ failed to consider the opinions of two reviewing experts (Dr. Vandivier and Dr. Lorenzo), which denies her, and any reviewing court, a clear explanation of the final decision. (R. 11 at 24–25; R. 17 at 6–7.)

As part of the disability determination process, medical and/or psychological consultants "complete[] the medical portion of the case review and any applicable residual functional capacity assessment about all physical [and/or] mental impairment(s) in a claim." 20 C.F.R. §404.1616(a), (b). For the initial determination level of Cashmer's first application, Gary Turner, M.D., provided a physical opinion and H. Thompson Prout, Ph.D., provided a psychiatric opinion. (AR 262–74.) Dr. Turner and Dr. Prout's combined report, dated June 20, 2018, recommended a disability determination of "**Not Disabled**." (AR 274.) For the reconsideration level of Cashmer's first application, Jose Lorenzo, M.D., and Dan Vandivier, Ph.D., provided assessments. (AR 276–88.) Dr. Lorenzo and Dr. Vandivier's combined report, dated September 5, 2018, also recommended a disability determination of "**Not Disabled**." (AR 287.) For Cashmer's second application, Jacqueline Fister, M.D., and D. Stevens-Watkins, Ph.D., provided initial determination assessments. (AR 2550–58, 2559–67.) Once again, Dr. Fister and Dr. Stevens-Watkins' combined report, dated December 28, 2021, recommended a disability determination of "**Not Disabled**." (AR 2557, 2566.)

The ALJ cited each report (designated as Exhibits 1A, 3A, 14A, and 15A) in her decision. (AR 2406, 2418.) The ALJ also referenced four of the six consultants by name when evaluating the persuasiveness of the reports. (*Id.*) However, it does appear that the ALJ conflated the mental assessments of Dr. Vandivier with Dr. Stevens-Watkins and the physical assessments of Dr. Lorenzo with Dr. Fister in the reconsideration reports. (*Id.*)

SSA regulations advise that an ALJ is "not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source *individually*." 20 C.F.R. § 1520c (emphasis added). While the ALJ is required to

"develop the record fully and fairly, [they are] not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhard*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). ALJ Jackson conducted a full and thorough review of the record, including the reports of the state agency consultants. While she did not mention Dr. Vandivier or Dr. Lorenzo by name in her decision, she cites their reports twice, addresses their specific findings, and appears to cross reference their assessments to other treating and examining physician opinions to evaluate their persuasiveness. (AR 2406–07, 2418–19.) This is sufficient under the substantial evidence standard.

As for Plaintiff's misattribution allegation, at most this appears to be harmless error. Dr. Vandivier and Dr. Lorenzo's mental and physical assessments from September of 2018 were consistent with or more conservative than the ALJ's when determining Cashmer's level of impairment during the contested period. Dr. Vandivier's opinion states that Cashmer had no limitation in understanding, remembering, or applying information or in interacting with others; and only mild limitation in concentrating, persisting, or maintaining pace and in adapting or managing herself. (AR 282.) Similarly, the ALJ found that because Cashmer's "medically determinable mental impairments cause[ed] no more than 'a mild' limitation in any of the functional areas, they [were] nonsevere." (AR 2409.) As for Dr. Lorenzo, he assessed Cashmer was capable of "light" exertional level work with the ability to lift/carry up to 20 pounds and stand/walk up to 6 hours a day. (AR 284–85.) The ALJ however found that Cashmer was only capable of sedentary work, which is characterized as "lifting no more than 10 pounds at a time" and walking/standing occasionally under 20 C.F.R. § 404.1567. (AR 2423.) Because Dr. Vandivier and Dr. Lorenzo's opinions supported a less favorable disability determination than what the ALJ ultimately decided, Plaintiff could not have been prejudiced by the ALJ's supposed misattribution or omission.

## IV. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby ORDERED that:

(1) The Plaintiff's Motion for Judgment on the Pleadings (R. 11.) is **DENIED**;

(2) The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(3) A judgment will be entered contemporaneously with this order.

This 28th day of September, 2026.

**Signed By:**
***Karen K. Caldwell*** KKC
**United States District Judge**